FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 3:59 pm, Feb 19, 2013

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 Case |
| RICKIE D'ANTIGNAC | ) | Number <u>05-10620</u> |
| VERONICA BERNNADETTE D'ANTIGNAC, | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |

## OPINION AND ORDER

Before the Court is a Motion to Reopen Chapter 13 Case filed by Veronica Bernnadette D'Antignac ("Debtor") with an objection from Deere & Company d/b/a John Deere Commercial Products ("John Deere"). This is a core proceeding pursuant to 28 U.S.C. §157(b) and the Court has jurisdiction pursuant to 28 U.S.C. §1334. For the following reasons, the motion to reopen is denied.

## FINDINGS OF FACT

Rickie[1] and Veronica Bernnadette D'Antignac ("Debtors") filed their chapter 13 petition on February 22, 2005. Their chapter 13 plan was confirmed on August 8, 2005. Debtors received their bankruptcy discharge on November 5, 2008 after completing their plan payments which resulted in a dividend to unsecured creditors of

---

[1] Rickie D'Antignac passed away in 2009. Mrs. D'Antignac is referred to as "Debtor."

1

approximately 38.5%. The bankruptcy case was closed on February 5, 2009.

On August 22, 2008, less than three months prior to her discharge, and before the case was closed, Debtor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against her employer, John Deere, for a purported cause of action that arose at the end of June 2008. This purported cause of action arose three years after Debtors' bankruptcy plan was confirmed and five months before Debtors' discharge.

On June 1, 2010, more than a year after the bankruptcy case was closed, Debtor received a right to sue notice from the EEOC. On August 1, 2010, she filed a complaint against John Deere in the District Court for the Southern District of Georgia, Civil Action No. 1:10-CV-00116-JRH-WLB ("District Court Action"). John Deere filed a summary judgment motion in the District Court Action raising several issues including the argument that by failing to amend her bankruptcy schedules to disclose this purported cause of action Debtor is judicially estopped from pursuing the cause of action in District Court.

Thereafter, in June 2012, Debtor filed a Motion to Reopen her Chapter 13 case to amend her bankruptcy schedules to disclose this

2

discrimination claim. Debtor asserts that if the District Court Action is successful her unsecured creditors could potentially receive a substantial increase from the 38.5% dividend already paid. John Deere argues this Court should not allow Debtor to reopen her bankruptcy case contending that as a matter of law, the chapter 13 plan can no longer be modified. John Deere also argues it would be prejudiced by the reopening because it would purportedly deprive John Deere of its judicial estoppel defense in the District Court and State Court actions.

## CONCLUSIONS OF LAW

**Standing.**

John Deere's standing to oppose Debtor's motion to reopen is a threshold issue. Standing is defined as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary (9th ed. 2009). Bankruptcy Rule 5010 allows a case to be reopened "on motion of the debtor or a party in interest pursuant to §350(b). . . ." Fed. R. Bankr. P. 5010. Standing to oppose a motion to reopen is not expressly addressed in the Bankruptcy Code or Rules. Courts considering the issue focus on whether the objecting party is a "party in interest." See In re Tarrer, 273 B.R. 724, 730-31 (Bankr. N.D. Ga. 2001).

3

"Party in interest" is not defined in the Bankruptcy Code but is generally defined as someone "who [has] a stake in the outcome of the bankruptcy case. They generally fall within four major relatively well-defined groups - debtors, creditors, equity security holders, and court fiduciaries." In re Rodrigues, 370 B.R. 467, 475 (Bankr. D. Mass. 2007) quoting William C. Hillman & Margaret M. Crouch, Bankruptcy Deskbook § 1.4 at 1-10 (4th ed. 2005 & Supp.); see also 11 U.S.C. §1109(b) (party in interest includes the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee). Whether a party is a party in interest is determined on a case by case basis. Peachtree Lane Assocs., Ltd. v. Grandader (In re Peachtree Lane Assocs., Ltd.), 188 B.R. 815, 824 (N.D. Ill. 1995). The term is construed broadly to allow affected parties to appear and be heard, but it is not infinitely elastic. In re Pub. Serv. Co. of New Hampshire, 88 B.R. 546, 550 (Bankr. D.N.H. 1988) citing In re Johns-Mansville Corp., 36 B.R. 743 (Bankr. S.D.N.Y. 1984); In re Ionosphere Clubs, Inc., 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989). To qualify as a party in interest requires more than merely being interested in the outcome of the bankruptcy. It requires a direct legal interest in the case or matter. In re Morris Publ'g Group LLC,

4

2010 WL 599393, at *3 (Bankr. S.D. Ga. Feb. 10, 2010) appeal dismissed, 2011 WL 1167180 (S.D. Ga. Mar. 28, 2011)(dismissing appeal because appellant lacked standing); In re Rimstat, Ltd., 193 B.R. 499, 503 (Bankr. N.D. Ind. 1996). The term party-in-interest "'is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'" Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.), 71 F.3d 353, 356 (10th Cir. 1995) (quoting Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson), 5 F.3d 750, 756 (4th Cir. 1993).

Section 1109(b) provides that a party in interest may appear and be heard on any issue in a chapter 11 proceeding. 11 U.S.C. §1109(b). While there is no comparable Bankruptcy Code provision specifically applicable to chapter 13 proceedings, the party in interest concept is common in bankruptcy and there is no reason why the same analysis should not apply in chapter 13 proceedings. In re Tarrer, 273 B.R. at 730-31.

The "party in interest" analysis also is subject to the dictates of standing conferred by Article III of the Constitution. In re Phillips, 2012 WL 1232008 *2 (Bankr. D.N.J. April 12, 2012); In re Tarrer, 273 B.R. at 730-31. Under the broader doctrine of constitutional standing, "a party wishing to participate in a

5

bankruptcy proceeding must: 1) have suffered an actual injury or show the imminence of such injury; 2) establish that the injury is fairly traceable to the conduct at issue; and 3) demonstrate that the requested relief is likely to redress the injury." In re Tarrer, 273 B.R. at 731.

Courts considering the issue have disagreed whether defendants in non-bankruptcy court actions have standing to oppose the reopening of a bankruptcy case. Compare In re Lewis, 273 B.R. 739, 743 (Bankr. N.D. Ga. 2001)(state court defendants may oppose motion to reopen because of impact reopening would have on both forums); In re Tarrer, 273 B.R. at 731 (a state court defendant's "interest in avoiding a long and potentially expensive litigation on the merits is a sufficiently concrete interest to support a finding that they are parties in interest for the purpose of objecting to the Debtors' motion to reopen. Additionally, if the Court grants the pending motion, the [state court defendant's] potential loss of its judicial estoppel defense would be an imminent injury directly traceable to the Court's decision.") with In re Riazuddin, 363 B.R. 177, 182-83 (10th Cir. B.A.P. 2007)(state court defendant did not have standing to oppose the motion because its liability would be affected by the state suit but not by the bankruptcy); In re Miller, 347 B.R.

6

48, 52 (Bankr. S.D. Tex. 2006)(since bankruptcy estates are administered for the benefit of creditors and the debtor and not for entities who may owe money to the bankruptcy estate, [the state court defendant] has no right to complain about how the estate is administered); <u>In re Sweeney</u>, 275 B.R. 730, 733 (Bankr. W.D. Pa. 2002)(defendants do not have standing in bankruptcy simply because they have standing in state court action); <u>In re Indus. Marine Diesel</u>, 1997 WL 33474937 *3 (Bankr. S.D. Ga. Jan. 31, 1997)(a party whose "only interest in [the motion to reopen] is as a defendant in an antitrust lawsuit, is not a 'party in interest' and has no standing [to oppose the chapter 7 debtor's motion to reopen]"); <u>In re Phillips</u>, 2012 WL 1232008 at *3 ("[state court defendant] is not subject to an injury in fact based upon the reopening of the bankruptcy estate, nor does it hold a 'legally protected interest' that the debtor seeks to affect through the course of the bankruptcy, and thus is not a party in interest."); <u>see also</u> <u>In re Kreutzer</u>, 249 F. App'x 727, 729 (10th Cir. 2007)(state court defendant did not qualify for more stringent "person aggrieved" standard for appellate review of bankruptcy reopening); <u>Nintendo Co., Ltd.</u>, 71 F.3d at 356 (status as a defendant in an patent infringement suit did not confer standing to reopen the bankruptcy case).

7

After considering the matter, I agree with the cases holding defendants in non-bankruptcy court proceedings lack standing to oppose the reopening of a bankruptcy case and thus find John Deere is not a party in interest and does not have standing to oppose the Debtor's Motion to Reopen. The mere act of reopening a closed bankruptcy case does not afford any party substantive relief; it is a purely ministerial act with no legal significance for the underlying bankruptcy. Horizon Aviation of Virginia, Inc. v. Alexander, 296 B.R. 380, 382 (E.D. Va. 2003)("[m]erely granting a motion to reopen does not afford the parties any substantive relief, but rather provides the opportunity to request further relief."). Furthermore, the fact that many of the cases addressing the issue are chapter 7 proceedings does not alter this analysis as chapter 7 debtors are entitled to surplus recoveries. In addition, the chapter 7 debtor was the party moving to reopen in several of the cases, not the chapter 7 trustee. See In re Indus. Marine Diesel, 1997 WL 33474937 at *3; Alexander, 296 B.R. at 382; In re Phillips, 2012 WL 1232008 at *3. Furthermore, the focus for this issue is John Deere's standing, not the Debtor's position.

The parties acknowledge, and it is important to note that John Deere's judicial estoppel argument is not before this Court. In

8

fact, the decision whether to reopen this chapter 13 bankruptcy case should not be the basis to grant or deny John Deere's judicial estoppel argument.

> Judicial estoppel is a doctrine employed to protect the integrity of the judiciary. . . . No litigant engages in self-serving contradiction when the first representation is made to a Court. Here, when Debtor originally filed his bankruptcy petition and failed to schedule the claim against [the defendant], no judicial estoppel argument arose. Only when the subsequent representation was made (in the United States District Court case) did the estoppel issue arise. It seems self-evident that if the principle is invoked to protect the integrity of the judiciary, then it must be invoked in the Court in which the apparent self-serving contradiction occurred and in which the defense is first asserted. As such, it is not for this Court to anticipate that Debtor's prior conduct in this forum was of such a character as to warrant the 'death penalty' to his subsequent United States District Court case and bootstrap that belief into a conclusion that reopening should be denied. I hold that the Court where the age discrimination case is pending has exclusive jurisdiction to conclude whether Debtor's conduct here was so tainted as to warrant imposition of the rule in the case pending there.

In re Dewberry, 266 B.R. 916, 920 (Bankr. S.D. Ga. 2001)(internal citations omitted)(parenthesis in original); Barger v. City of Cartersville, Georgia, 348 F.3d 1289 (11th Cir. 2003)(reopening of the bankruptcy case did not prevent the doctrine of judicial estoppel

9

from applying to the debtor); Thompson v. Quarles, 392 B.R. 517, 525, n. 9 (S.D. Ga. 2008)(stating "it is the court applying the doctrine that will determine whether the elements of judicial estoppel were met in the original court, including whether the first court adopted the original position" and finding judicial estoppel inapplicable due to lack of evidence of bad faith in omitting the asset from the bankruptcy schedules).

In addition, even if the case is reopened, the reopening, in and of itself, is not a great prejudice or an imminent injury to John Deere. As discussed above, the reopening is a ministerial act and should have no bearing on the judicial estoppel argument. The court in which the litigation is pending is the proper court to address judicial estoppel arguments as the purported contrary position has not been taken in this bankruptcy court. See Barger, 348 F.3d at 1289 (reopening of the bankruptcy case did not prevent the doctrine of judicial estoppel from applying to the debtor); Rowan v. George H. Green Oil, Inc., 572 S.E.2d 338 (Ga. Ct. App. 2002)("the plaintiff in this case can avoid the application of judicial estoppel simply by filing a motion to amend the debtor's bankruptcy petition or a motion to reopen the debtor's bankruptcy case to declare the omitted claim or cause of action."); CSX Transp., Inc. v. Howell, 675 S.E.2d

10

306 (Ga. Ct. App. 2009)(same); see also Gulf Coast Fans, Inc. v. Midwest Elec. Imp., Inc., 740 F.2d 1499, 1510 (11th Cir. 1984)(noting the strong policy in favor of determining cases on their merits). For these reasons, John Deere lacks standing to oppose the Debtor's motion to reopen her chapter 13 bankruptcy case.

**Reopening.**

Regardless of whether John Deere has standing to object to the reopening, Debtor still has the burden to affirmatively establish grounds to reopen the bankruptcy case exist. In re Premier Benefit Capital Trust, 2006 WL 2385255 at *1 (Bankr. M.D. Fla. Aug. 15, 2006)("[T]he moving party has the burden to demonstrate sufficient cause to reopen."). Debtor must show a compelling cause to reopen the bankruptcy case. Horizon Aviation of Virginia, Inc. v. Alexander, 296 B.R. 380, 382 (E.D. Va. 2003). "If reopening the closed case would serve no purpose, it is pointless to reopen the case and the motion should be denied." In re Premier Benefit Capital Trust, 2006 WL 2385255 at *1. After considering the matter and for the reasons set forth below, I find it would be pointless to reopen Debtor's chapter 13 bankruptcy case and therefore deny the Debtor's motion to reopen.

Pursuant to 11 U.S.C. §350(b) "[a] case may be reopened in

11

the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. §350(b). The decision to reopen a case is left to the sound discretion of the bankruptcy judge and depends upon the circumstances of each case. Dennis v. Poff (In re Poff), 344 F. App'x 523, 525 (11th Cir. 2009); Apex Oil Co. v. Sparks (In re Apex Oil Co.), 406 F.3d 538, 542 (8th Cir. 2005); Citizens Bank & Trust Co. v. Case (In re Case), 937 F.2d 1014, 1018 (5th Cir. 1991).

The case sub judice cannot be reopened to administer assets. By statute, a chapter 13 bankruptcy plan cannot provide for payments that extend beyond 5 years. See 11 U.S.C. §§1322(d) and 1329. Debtor's chapter 13 case was filed in 2005. Debtor did not file her motion to reopen the case until more than seven years after the first payment became due under her chapter 13 plan and more than three years after her case was discharged and closed.[2] This is more than two years beyond the statutory time limits for payments to be made in a chapter 13 case. 11 U.S.C. §1322(d). "If the [chapter 13] case closed following the debtor's completion of payments, reopening the case to administer the asset may not accomplish anything because the Chapter 13 Trustee has no authority to liquidate assets in the absence of a

---

[2] This timing also puts the case beyond the one year period to seek revocation of the discharge. See 11 U.S.C. §1328(e).

12

plan provision and the plan, which presumably did not contemplate prosecution of the cause of action, cannot be modified after the debtor has completed her plan payments under Code §1329(a)." W. Homer Drake, Jr., Hon. Paul W. Bonapfel & Adam M. Goodman Chapter 13 Practice and Procedure, §6:7 (2012 ed.); see also In re Green, 2004 Bankr. LEXIS 418 (Bankr. M.D. Ga. April 7, 2004)(motion to modify plan untimely when filed after the debtor has completed all plan payments); In re Jacobs, 263 B.R. 39, 43 (Bankr. N.D. N.Y. 2001)(motion to modify plan was untimely where the debtors had completed their payments into the plan); In re Thompson, 344 B.R. 461, 465 (Bankr. W.D. Va. 2004)("[T]he Court is without authority to modify the Debtor's Chapter 13 Plan to provide additional payments to creditors more than five years after [the first plan payment became due]. Moreover, [citing §1329(a)] if a Chapter 13 Plan is to be modified, it must be done 'before the completion of payments under such plan.'"). By statute, no additional assets can be administered under this chapter 13 plan.

Debtor argues if she is successful in her employment discrimination case, she may not have to modify her chapter 13 plan because the money would merely be distributed in accordance with the terms of the confirmed plan. See HomEq Serv. Corp. v. Hauf, 2007 WL 196857 (M.D. Ga. Jan. 23, 2007)(stating that a plan need not be

13

modified as any proceeds from the cause of action can be distributed through the confirmed chapter 13 plan). In Hauf, the bank/creditor allegedly failed to properly credit the debtors' payments under a forbearance agreement and commenced two wrongful foreclosures against the debtors. Each foreclosure drove the debtors into bankruptcy. One filed in 2001 and the second filed in 2005. In the first case, the debtors objected to the bank's claim, and the parties agreed upon the claim amount. After the debtors completed the first chapter 13 plan and received their discharge, the bank's computer system allegedly continued to incorrectly reflect the debtors as delinquent and the bank commenced a second wrongful foreclosure action against the debtors causing debtors to file their second chapter 13 case. At that point, the debtors filed a lawsuit in district court for wrongful foreclosures and breach of contract. The bank claimed debtors were partially barred by judicial estoppel based upon their failure to list the cause of action in the bankruptcy schedules of the first case in 2001. Debtors moved to reopen their first chapter 13 bankruptcy case during the pendency of the debtors' second chapter 13 bankruptcy. The bankruptcy judge stated:

> At first blush it seems like a good argument that a plan may not be modified after it has paid out. That assumes, it seems to me, what is probably not the case, that a plan must be modified for the

14

>trustee to distribute money that has come into the trustee's hands with consent of the debtors for the purpose of making distributions to unsecured creditors who have filed claims in the case. Now, if you wanted to treat creditors more adversely than they had been treated in a plan, clearly you've got to have a modification. If you wanted to deal with the debtors' property or property of the estate, which may or may not have vested in the debtors, in a matter that might be contrary to the debtors' personal interest and without their consent, you would have to have a modification.
>
>But, it seems to me that if debtors come into money, from an inheritance, from winning the lottery, from a cause of action, from a gift, from whatever source, and the debtors consent to that money being paid through their Chapter 13 plan to unsecured creditors, that doesn't require a modification. The trustee can take those funds and pay them on a pro rata basis up to a hundred percent to the unsecured creditors. So the fact that the plan can't be modified, it seems to me, is not a reason to say that the trustee cannot administer the asset.

Hauf, 2007 WL 196857 at *4. (internal punctuation omitted). Hauf is distinguishable from the current case. First, in Hauf, the cause of action dealt with a prepetition cause of action. Second, the motion to reopen was filed within the 5 year period. Furthermore, as applied to the current facts, I disagree with the conclusion reached in Hauf. In the current case, there is no chapter 13 trustee. See Rule 5010. Even if the trustee were appointed, there is no asset to liquidate unless the chapter 13 plan is modified and statutorily, the plan cannot

15

be amended.

Section 1329(d) of the Bankruptcy Code provides that the plan cannot provide "for payments" to extend beyond five years. 11 U.S.C. §1322(d). The Debtor's proposed distribution would be payments and thus not allowed under 11 U.S.C. §1322(d). See In re Hussain, 250 B.R. 502, 509 (D.N.J. 2000) ("under no circumstances may a bankruptcy court confirm a chapter 13 plan that extends payment beyond the maximum five year statutory limitation set forth in §1322(d)."). This is not a proposal to extend an existing case for a few months to let Debtor complete her payments. Rather, this is a proposal to open a closed case, to appoint a chapter 13 trustee, and to liquidate a previously undisclosed asset. At this point, it is unknown if and when there will be any proceeds from this cause of action to distribute. For these reasons, I find Debtor cannot reopen her bankruptcy case to administer assets.

Under §350(b) a case also may be reopened (1) to accord relief to the debtor or (2) for other cause. However, the accorded relief to the Debtor cannot be contrary to the express provisions of the Bankruptcy Code. See In re Gomez, 456 B.R. 574, 577 (Bankr. M.D. Fla. 2011) (refusing to reopen a bankruptcy case where relief sought was not authorized by the Bankruptcy Code). In certain circumstances

16

it may be appropriate to reopen a chapter 13 case that extends beyond the time allowed by §1322(d). For example, it may be appropriate to reopen to accord a debtor relief to file a financial counseling certificate, or to list a creditor when the lien was avoided under the terms of a confirmed chapter 13 plan. Contrarily, the relief requested in this case is to amend the plan to disclose a potential asset for distribution to Debtor's creditors. The relief requested by Debtor is to administer the possible asset, and to defeat John Deere's judicial estoppel argument. As previously discussed, the bankruptcy cannot be reopened at this point to administer an asset. Furthermore, this bankruptcy court is not the appropriate forum to determine the judicial estoppel argument. As such, the motion to reopen cannot be granted to accord Debtor relief.

Next, Debtor argues "other cause" exists to reopen her bankruptcy case.[3] Because I find as a matter of law, Debtor cannot open her chapter 13 case, I need not address this good faith issue.

---

[3] There is a split of authority on whether "good faith" is a factor to consider in assessing a motion to reopen. Most of the cases requiring good faith address the situation where the debtor is seeking to add a creditor or debt, not to administer an asset. Compare Samuel v. Baitcher (In re Baitcher), 781 F.2d 1529 (11th Cir. 1986); In re Berry, 190 B.R. 486 (Bankr. S.D. Ga. 1995); In re Dewberry, 266 B.R. at 918; with In re Tarrer, 273 B.R. 724 (Bankr. N.D. Ga. 2001); Bittel v. Yamato Int'l Corp., 1995 WL 699672, *2 (6th Cir. 1995).

AO 72A
(Rev. 8/82)

As previously discussed, the Bankruptcy Code expressly provides that chapter 13 plan payments cannot exceed five years. Debtor cannot use the "other cause" language of §350(b) to circumvent the express language of the Bankruptcy Code. 11 U.S.C. §1322(d) and §1329(c); see also In re Gomez, 456 B.R. at 577(refusing to reopen case where relief sought was not authorized by the Bankruptcy Code).

Debtor cites In re Tarrer for support to allow a chapter 13 case to be reopened beyond the statutory five year period, but the court in that case did not address the five year limitation of chapter 13 cases. Furthermore, the cases relied upon in In re Tarrer are chapter 7 cases which do not have comparable time constraints set forth in 11 U.S.C. §1322 and §1329(c). I respectfully disagree with the conclusion that a seven year old chapter 13 bankruptcy case can be reopened to afford the requested relief. In re Thompson, 344 B.R. 461 (Bankr. W.D. Va. 2004).

In conclusion, there are two additional points to note. First, nothing in this ruling condones a debtor's failure to properly disclose assets and liabilities. There are numerous remedies available to protect the integrity of the bankruptcy system from such conduct, including without limitation, the implementation of judicial estoppel by the appropriate court, denial of a debtor's exemptions,

18

denial or revocation of a debtor's discharge, dismissal of a case with or without prejudice, and criminal prosecution for bankruptcy fraud.

Second, the denial of Debtor's Motion to Reopen is not because of any issues relating to Debtor's good or bad faith.

For the foregoing reasons, Debtor's Motion to Reopen is ORDERED DENIED.

_____
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 19th Day of February 2013.

AO 72A
(Rev. 8/82)